_____ FILED      _____ ENTERED
_____ LODGED   _____ RECEIVED

FEB 21 2019    CA

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Edward D. Fagan, Pro Se
590 NE Wavecrest Way
Boca Raton, FL 33432
Tel. (561) 757-5432
Email: faganinternational@gmail.com
     Applicant Pro Se

*(handwritten in left margin: Fee paid /SEA #94802)*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

CASE # _____ **MC19-019** RSL

In Re:

Application of EDWARD D. FAGAN
pursuant to 28 U.S.C. § 1782 for Judicial Assistance in
obtaining evidence from BANK OF AMERICA
J. P. MORGAN CHASE a/k/a CHASE and
CREDIT REGISTRY CORP.
for use in a Foreign Tribunal and Proceeding

## APPLICATION FOR JUDICIAL ASSISTANCE
## PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING

     EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant,

hereby makes the following application for limited judicial assistance pursuant to 28 U.S.C. §

1782 to aid in Foreign Proceeding(s) which is now pending before and being investigated by the

South African Police Services – Serious Commercial Crimes Unit - SAPS # 3471/1/2019 - and

hereby requests an order directing production of documentary evidence that is in the custody,

possession and/or control of Witnesses BANK OF AMERICA, J. P. MORGAN a/k/a CHASE

and CREDIT REGISTRY CORP. which are found in and which do business in this District, and

respectfully shows the Court the following:

I.     **INTRODUCTION**

     1.  This Application for Judicial Assistance is to obtain evidence as allowed pursuant to

          Section 1782(a), and the US Supreme Court in *Intel v. Advanced Micro Devices, Inc.*,

1   542 U.S. 241 (2004) so that the evidence obtained from persons and entities residing

2   and/or found within this judicial district so that evidence " . . . for use in a proceeding

3   in a foreign or international tribunal, including criminal investigations conducted

4   before formal accusation."

5   2.  As explained below, Applicant, his partners and predecessors (hereinafter collectively

6   referred to as "Applicant") are victims of internet fraud and crimes, which are a new

7   twist on the long standing "Nigerian Scams", involving inheritance monies. [1]

8   3.  Monies involved in the fraud and crimes against Applicant were funneled through

9   accounts that were opened and maintained with the Witnesses BANK OF AMERICA

10   (hereinafter "BOA"), J.P. MORGAN a/k/a CHASE (hereinafter "CHASE") AND

11   CREDIT REGISTRY CORP. (hereinafter "CREDIT REGISTRY") are located in and

12   found in this District.

13   4.  The evidence sought (i) is limited to the two accounts and the two different transfers

14   that occurred through BoA and CHASE accounts, listing CREDIT REGISTRY as the

15   beneficiary, in May and June 2017 (as identified in Par. 21) and (ii) is to be used in

16   the Foreign Proceeding pending before and being investigated by the South African

17   Police Services – Serious Commercial Crimes Unit - SAPS # 3471/1/2019.  A copy

18   of SAPS # 3471/1/2019 and police docket sheet is attached as Exhibit 1.

19   5.  The South African Police Services investigation has been assigned to Captain Eric

20   Chiloane of the South African Police Services – Serious Commercial Crime Unit, at

21   419 Unit 22 Buthongo Building, Car Visagie and Andries Streets Pretoria, Email

22   address below ChiloaneEric@saps.og.za

---

[1]   Applicant acquired and is the assignee and owner of 100 % of the rights and interests of his partners and predecessors, including but not limited as relates to this Application Russ Daneluk and Rick Quigley.  Attached collectively as Exhibit 2.

6.  The Applicant has been requested to and will return to South Africa to provide additional information so that the South African Police Services – Serious Commercial Crime Unit – which will in turn share the information with and that they will share that information with the South African Department of Justice and South Africa's Branch of Interpol, who will also be investigating and who will prosecute all the persons involved with the crimes against Applicant and who actually received the monies that were transferred through the Witnesses BoA, CHASE and CREDIT REGISTRY.

II.  **FACTS RELATED TO THE APPLICATION**

1.  Applicant is a victim to a scheme that involved electronic communications sent to an American Woman from Idaho (hereinafter "The Idaho Woman") who was allegedly an heir to inheritance monies and assets that were held in Nigeria, but which could be transferred to the United States.

2.  The inheritance monies and assets to which The Idaho Woman claimed entitlement allegedly came from her deceased father (hereinafter "Inheritance Monies") and were allegedly lawfully earned during the course of her father's contracting business(es) in Africa.

3.  The Idaho Woman came to know a Canadian national who she allegedly met from her mother.

4.  The Idaho Woman and The Canadian National supposedly became engaged.

5.  The Canadian National was a relative of one of Applicant's predecessors.

6.  The Idaho Woman and The Canadian Man (and later Applicant) were told that in order to get The Inheritance Monies to be transferred certain monies for fees, services, customs, duties and other charges had to be paid.

7. Prior to approaching Applicant, The Idaho Woman and The Canadian National allegedly exhausted all their resources and were unable to complete the transfer.

8. They then approached Applicant, to induce them to provide additional assistance, documents and monies.

2. Applicant was offered rights and interests to The Inheritance Monies assuming Applicant would provide the additional monies, resources and assistance to get The Inheritance Monies transferred into account(s) where they could then be legally distributed to the interested persons.

3. Applicant provided with documents in which The Idaho Woman purportedly transferred her interests in The Inheritance Monies to The Canadian National.

4. On their face, the documents appeared to be legitimate and there appeared to be no reason to doubt that The Inheritance Monies existed and could be legally transferred.

5. At all times, Applicant believed that The Inheritance Monies actually existed, the rights to The Inheritance Monies were legitimate and he could lawfully acquire an interest in the monies and assets.

6. At all times, Applicant was committed to the fact that before anyone was entitled to receive and take any of The Inheritance Monies that all taxes, customs duties, transfer fees and other government and regulatory compliance requirements were met and that when the money was actually transferred, it would be clean and not the subject of any illegal or unlawful activity.

7. Applicant considered this to be a lawful business investment to which they would contribute time, energy and monies in exchange for the return of The Inheritance Monies.

8. From 2016 to present, Applicant was solicited to assist in getting The Inheritance

1    Monies lawfully transferred because The Idaho Woman and The Canadian National

2    had exhausted all their resources, were unable to complete the transfer and needed

3    additional assistance and monies.

4    9.  The American woman and The Canadian National gave Applicant documents and

5    information that was used by the scheme's coordinators and which to documents and

6    information were intended to convince Applicant about the existence of the alleged

7    inheritance monies and the bona fides of what the scheme's coordinators said was

8    needed to be done in order to get the release of The Inheritance Monies.

9    10. Applicant was told (verbally and in writing) that what was needed to ensure the

10    transfer of The Inheritance Monies was the payment of various fees, invoices, costs

11    or other monies to persons and entities who had accounts at various banks in the

12    United States.

13    11. Applicant was presented with various documents all of which were transmitted by

14    email or text messages and in which the domain names, email addresses and

15    documents themselves appeared on their face to be authentic.

16    12. In reality, the documents and information presented to Applicant were fakes and

17    were part and parcel of an elaborate scheme designed and intended to trick Applicant

18    to transfer monies to accounts throughout the United States and as relates to this

19    Application, to accounts that were maintained by the Witnesses BoA, CHASE and

20    CREDIT REGISTRY in this District.

21    13. Some of the persons who are the subject of the investigation pending before and

22    being investigated by the South African Police Services – Serious Commercial

23    Crimes Unit - SAPS # 3471/1/2019 have already been identified.

24    14. The identity of other persons and entities as well as the persons / entities behind the

1    scheme can only be discovered through the information subpoenaed from Witnesses

2    BoA, CHASE and CREDIT REGISTRY – and those persons relationships to the

3    persons in South Africa are important to the investigation of South African Police

4    Services – Serious Commercial Crimes Unit - SAPS # 3471/1/2019.

5    15. The persons involved created (i) fake domain names disguising themselves as banks,

6    financial institutions and government agencies; (ii) fake government agency

7    letterheads and documents; and (iii) fake bank and financial institution letterheads

8    and documents.

9    16. By way of example, attached are examples of the fake emails originating from fake

10    domain addresses and transmitting forged documents:

11        a.    Exhibit 3 - Email from Domain Name – "draftissue.com" – masquerading as

12            a "Chase Bank" domain and email name / address.   In reality, the domain

13            name "draftissue.com" and the email addresses associated with it are / were

14            not Chase Bank emails, the documents being transmitted were not authentic

15            Chase documents and the domain was owned and operated out of South

16            Africa by the woman who is the subject of the pending criminal investigation

17            in South Africa.

18        b.    Exhibit 4 – proof that the domain name "draftissue.com" is NOT a Chase

19            Bank domain name but is owned and operated by the South African woman

20            who is the subject of the pending criminal investigation in South Africa and

21            who is one of the wrongdoers in the internet crimes committed against

22            Applicant.

23        c.    Exhibit 5 - Email from Domain Name – "fddic.com" – masquerading as the

24            United States Government's Federal Deposit Insurance Corporation ("FDIC")

domain and email name / address.   In reality, the domain name "fddic.com"
and the email addresses associated with it are / were not official US
Government FDIC emails, the documents being transmitted were not
authentic US Government FDIC documents and the domain was owned and
operated out of South Africa by the woman who is the subject of the pending
criminal investigation in South Africa.

    d. Exhibit 6 – proof that the domain name "draftissue.com" is NOT a Chase
Bank domain name but is owned and operated by the South African woman
who is the subject of the pending criminal investigation in South Africa and
who is one of the wrongdoers in the internet crimes committed against
Applicant.

17. Using the fake, forged and false documents, tricked Applicant into believing that The
Inheritance Monies are / were legitimate and could be transferred.

18. These fake, forged and false documents purportedly authenticated The Inheritance
Monies and "confirmed" that The Inheritance Monies were held by banks or
financial institutions oversees which will transfer the inheritance assets to banks or
financial institutions in the United States.

19. The above fake forged and false documents were used to get Applicant to transfer the
monies to the BoA, CHASE and CREDIT REGISTRY accounts as set forth in par.
21 below.

20. From 2016 to present, Applicant transferred millions of dollars in an effort to secure
The Inheritance Monies, which combined were alleged to have been in excess of
forty-seven million dollars (47,000,000.00 USD).

21. As relates to the Witnesses the following transfers were made to accounts on which

1  CREDIT REGISTRY was listed as the beneficiary:

2      a. May 29, 2017 - BoA Account # XXXXXX5522 - $ 30,000.00

3      b. June 13, 2017 – CHASE - Account #XXXX5078 - $ 50,000.00

4  22. Each time Applicant was told to send the money to the BoA and CHASE accounts,

5      listing CREDIT REGISTRY as the beneficiary, the monies were supposed to secure

6      the release of The Inheritance Monies in which Applicant acquired an interest and

7      were helping to secure the patriation of the assets and the payment of all taxes,

8      customs and duties related to the transfer of inheritance assets.

9  23. Applicant was told by the South African Police Services – Serious Commercial

10      Crimes Unit – that they intend to "follow the money" that was, in part, transferred to

11      / through the above BoA and CHASE accounts, listing CREDIT REGISTRY as the

12      beneficiary.

13  24. Applicant has no recourse or ability on his own – without the relief granted in this

14      Application - to be able to present the South African Police Services – Serious

15      Commercial Crimes Unit – with the account information to assist them in "following

16      the money" to identify the person(s) or entities, who/which are behind this massive

17      internet fraud and to whom the monies were transferred after the monies left the

18      above referenced BoA and CHASE accounts, listing CREDIT REGISTRY as the

19      beneficiary.

20  25. Applicants therefore seeks to serve subpoenas upon the witnesses BoA and CHASE

21      for the limited information related to the two accounts and the two different transfers

22      that occurred, through the above BoA and CHASE accounts, listing CREDIT

23      REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21).

24  26. This application seeks ONLY information related to above referenced two accounts

and two different transfers that occurred, through the above BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21).

27. The Witnesses BoA, CHASE and CREDIT REGISTRY should have the information related to above referenced two accounts and two different transfers that occurred, through the above BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21) and specifically where the monies were transferred and/or by whom the monies were withdrawn.

28. This is all information that the South African Police Services – Serious Commercial Crimes Unit – suggested that Applicant try to get for them.

29. Applicant is not seeking to circumvent evidence gathering laws or procedures in South Africa.

30. Applicant is engaged in a fishing expedition.

31. Applicant believes that this application is the best and fastest way to obtain evidence needed to assist the South African Police Services – Serious Commercial Crimes Unit – in their investigation and ultimate prosecution of the persons who were behind the internet fraud and scheme and who will be shown to have directly received and benefitted from the monies that were transferred through the above referenced two accounts and two different transfers that occurred, through the above BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21)

32. Applicant believes that granting the relief requested presents no hardship or burden to related to information related to above referenced two accounts and two different transfers that occurred, through the above BoA and CHASE accounts, listing

1    CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par.

2    21), all of which can be easily provided by the witnesses because the evidence is in

3    their possession in this district and any electronically stored evidence can easily be

4    produced from their servers, computer stored files and databases in this district.

5    33. Applicant believes that granting the relief requested on an ex-parte basis is

6    appropriate as it does not affect the witnesses BoA and CHASE or CREDIT

7    REGISTRY as this request is only to grant the issuance of subpoenas to which a

8    Motion to Quash or Objections may be filed.  See Macquarie Bank I, 2014 WL

9    7706908, at *1 (citing In re Letters Rogatory from Tokyo Dist., Tokyo, Japan, 539

10   F.2d 1216, 1219 (9th Cir. 1976)); IPCom GMBH & Co. KG v. Apple Inc., 61 F.

11   Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file ex parte

12   applications, as parties will be given adequate notice of any discovery taken pursuant

13   to the request and will then have the opportunity to move to quash the discovery or to

14   participate in it." (footnote and quotation omitted)).

15   34. Applicant believes that granting this application is consistent with the principles of

16   28 U.S.C. § 1782 and Fed R. Civ. P Rule 26. [2]

17   **II.    WITNESSES ARE FOUND IN THIS DISTRICT**

18   1.  The Witness BANK OF AMERICA maintains a branch, with officers, personnel and

19   a phone number at 20830 108th Avenue SE, Kent, Washington in this District.  See

---

[2]    28 U.S.C. § 1782 provides that testimony shall be taken, and documents / things produced in accordance with the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 26(d) provides that a district court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL 3419189 (N.D. Cal. 2010)* (applicant should be given opportunity through discovery to identify unknown persons/entities) *(citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002)* and *Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)* (factors to be considered when establishing good cause to learn the identity of an unknown entity through early discovery).

1      https://locators.bankofamerica.com/wa/kent/financial-centers-kent-

2      8135.html?utm_source=GMBlisting&utm_medium=organic

3      2. The Witness J.P. MORGAN CHASE a/k/a CHASE maintains a branch with officers,

4      personnel and a phone number at 23630 104th Avenue, Kent, Washington, in this

5      District. See

6      https://locator.chase.com/search/wa/kent?q=98031&jp_cmp=rb%2FLocalListings%2

7      Faff%2Fbranch%2Fna

8      3. The Witness CREDIT REGISTRY CORP. maintains offices and personnel in this

9      District (http://www.creditregistry.com/main/contactus.asp) and their address and

10      contact information as listed are 6226 S 233 Street, Kent WA 98032, Phones Office:

11      +1 (425) 269-5005 & Fax: +1 (832) 550-4200 and  Nigeria Address - NECOM

12      House, 14th Floor 15 Marina, Lagos Phones Office: +234 (1) 454-8700, +234 (1)

13      454-8701 and +234 (702) 537-3404.

**III.    WITNESSES ARE NOT PARTIES OR TARGETS OF FOREIGN INVESTIGATIONS**

The Witnesses BANK OF AMERICA, CHASE and CREDIT REGISTRY CORP. are not parties, nor are they in privy, with any other party in the investigations and proceedings by the South African Police Services – Serious Commercial Crimes Unit.

**IV.    THE APPLICATION IS CONSISTENT WITH SUPREME COURT PRINCIPLES**

     1. The application is consistent with the principles and standards set forth in *Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., No. 11-12879, 2012 WL 2369166 (11th Cir. June 25, 2012); see In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001); Kulzer v. Esschem. Inc., 390 Fed. Appx. 88, 91 (3d Cir. 2010).*

2.  Further, as reflected by the language of § 1782, its purpose is to provide federal court assistance in gathering evidence for use in a foreign tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); and Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004)* (§ 1782 has "twin aims," i.e., "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts") (internal quotation marks omitted).

V.  **EVIDENCE SOUGHT IS SPECIFIC/RELEVANT TO FOREIGN INVETIGTIONS**

1.  The evidence sought in this Petition is limited.  It requests only specific information related to the above referenced two accounts and two different transfers that occurred, through BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21)

2.  The evidence sought will be provided to the South African Police Services – Serious Commercial Crimes Unit – so that they can identify and prosecute the person(s) or entities, who/which are behind this massive internet fraud and to whom the monies were transferred AFTER they left the above referenced two accounts and two different transfers that occurred, through BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21)

VI. **EX-PARTE APPLICATION PRESERVES WITNESS' RIGHTS TO RAISE OBJECTIONS TO SUBPOENA VIA MOTION TO QUASH**

1.  In general, ex parte requests are disfavored and mostly limited to emergency situations because such requests disrupt and undermine the adversarial system on which the Court generally operates. In re Judicial Assistance Pursuant to U.S.C. Sec.

1     1782 ex rel. Macquarie Bank Ltd. (Macquarie Bank I), 2014 WL 7706908, at *1 (D.

2     Nev. June 4, 2014); In re Intermagnetics Am., Inc., 101 B.R. 191, 192-93 (C.D. Cal.

3     1989).

4     2.  The Ninth Circuit has held that applications for subpoenas pursuant to § 1782 may be

5     filed *ex parte* because "[t]he witnesses can . . . raise[] objections and exercise[] their

6     due process rights by motions to quash the subpoenas." *In re Letters Rogatory from*

7     *Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).*

8     3.  § 1782 petitions are regularly reviewed on an ex parte basis. See Macquarie Bank I,

9     2014 WL 7706908, at *1; In re Republic of Ecuador, 2010 WL 3702427, *2 (N.D.

10     Cal. Sept. 15, 2010).

11     4.  Consequently, orders granting § 1782 applications typically only provide that

12     discovery is "authorized," and thus the opposing party may still raise objections and

13     exercise its due process rights by challenging the discovery after it is issued via a

14     motion to quash, which mitigates concerns regarding any unfairness of granting the

15     application ex parte. See Macquarie Bank I, 2014 WL 7706908, at *1 (citing In re

16     Letters Rogatory from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir.

17     1976)); IPCom GMBH & Co. KG v. Apple Inc., 61 F. Supp. 3d 919, 922 (N.D. Cal.

18     2014) ("It is common for parties to file ex parte applications, as parties will be given

19     adequate notice of any discovery taken pursuant to the request and will then have the

20     opportunity to move to quash the discovery or to participate in it." (footnote and

21     quotation omitted)).

22     5.  Petitioner only seeks the issuance of the subpoena which is necessary to compel the

23     Witnesses BoA, CHASE and CREDIT REGISTRY to produce account related

24     information, related to above referenced two accounts and two different transfers that

1   occurred, through the above BoA and CHASE accounts, listing CREDIT

2   REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21).

3   6.   In the event Witness BoA or CHASE or CREDIT REGISTRY object to the

4   requested production, their rights are preserved, and they can file a Motion to Quash

5   after the subpoenas have been authorized and served on the Witness Bank.

**VII.   PETITION IS MADE IN COMPLIANCE WITH 28 U.S.C. § 1782 REQUIREMENTS, CIRCUIT PRECEDENT & SHOULD BE GRANTED**

**A.   The Requirements of Section 1782 and Subpoenas Have Been Met**

1.   28 U.S.C. § 1782(a), which provides:

> *The district court of the district in which a person resides or is found may order*
>
> *him to give his testimony or statement or to produce a document or other thing for*
>
> *use in a proceeding in a foreign or international tribunal, <u>including criminal</u>*
>
> *<u>investigations conducted before formal accusation.</u>   The order may be made*
>
> *pursuant to a letter rogatory issued, or request made, by a foreign or*
>
> *international tribunal or upon the application of any interested person and may*
>
> *direct that testimony or statement be given, or the document or other thing be*
>
> *produced, before a person appointed by the court. By virtue of his appointment,*
>
> *the person appointed has power to administer any necessary oath and take the*
>
> *testimony or statement. The order may prescribe the practice and procedure,*
>
> *which may be in whole or part the practice and procedure of the foreign country*
>
> *or the international tribunal, for taking the testimony or statement or producing*
>
> *the document or other thing. To the extent that the order does not prescribe*
>
> *otherwise, the testimony or statement shall be taken, and the document or other*
>
> *thing produced, in accordance with the Federal Rules of Civil Procedure.*
>
> *Emphasis added*

2.  Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. *Intel, 542 U.S. at 247-48.*

3.  The use of *ex parte* applications is widespread and, in many cases, unremarked upon (and thus approved of *sub silentio*). *See, e.g., In re Request from UK Pursuant to Treaty Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters in the Matter of Dolours Price, 685 F.3d 1, 6 (1st Cir. 2012), cert. denied, 133 S. Ct. 1796 (2013); Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 78 (2d Cir. 2012); In re Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., 685 F.3d 987, 992 (11th Cir. 2012); In re Clerici, 481 F.3d 1324, 1329 (11th Cir. 2007).*

4.  "The history of § 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To, 858 F.2d 1564, 1565 (11th Cir. 1988).*

5.  Congress has granted the district courts broad discretion in granting judicial assistance under § 1782. *In re Application of Consorcio Ecuatoriano de Telecommunicaciones S.A., 2012 WL 2369166, at \*21 (11th Cir. 2012); In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001).*

6.  The district court has authority to grant § 1782 application for judicial assistance if the following statutory requirements are met: (1) request must be made "by a foreign or international tribunal," or by "any interested person"; (2) request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) evidence must be "for use in a proceeding in a

1   foreign or international tribunal"; and (4) person/entity from whom/which discovery

2   is sought must reside and be found in the district of the district court ruling on the

3   application for assistance. 28 U.S.C. § 1782(a); *In re Clerici, 481 F.3d at 1332, and*

4   *In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at \*15.*

5   7.   Once the statutory requirements have been satisfied, the district court should consider

6   the following factors in deciding whether to exercise the discretion granted under §

7   1782: (1) whether "the person from whom discovery sought is a participant in the

8   foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent

9   as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of

10  the foreign tribunal, the character of the proceedings underway abroad, and the

11  receptivity of the foreign government or the court or agency abroad to U.S. federal

12  court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to

13  circumvent foreign proof-gathering restrictions or other policies of a foreign country

14  or the United States"; and (4) whether the request is otherwise "unduly intrusive or

15  burdensome." *In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-65).*

16  8.   The Supreme Court has held that § 1782 does not contain a "foreign-discoverability

17  requirement" – i.e., there is no requirement that the information sought be

18  discoverable under the law governing the foreign proceeding. Intel, 542 U.S. at 253.

19  The Court has further held that there is no requirement that a § 1782 applicant show

20  "United States law would allow discovery in domestic litigation analogous to the

21  foreign proceeding." Id. at 263.

22  9.   Section 1782(a) further "directs judges to provide discovery assistance pursuant to the

23  Federal Rules of Civil Procedure," *Weber v. Finker, 554 F.3d 1379, 1383 (11th Cir.*

24  *2009),* so long as the order does not prescribe the practice and procedure of the

1    foreign country or the international tribunal.

2    **B.  <u>Applicant Has Met the § 1782(a) Statutory Requirements</u>**

3    1.  The complaints pending and ongoing investigations by the South African Police

4    Services – Serious Commercial Crimes (SAPA # 3471/1/2019) is a foreign

5    proceeding. *See 28 U.S.C. § 1782(a) and In re Letters of Request to Examine*

6    *Witnesses, 59 F.R.D. 625, 629 (N.D. Cal. 1973)* ("crucial requirement is that the

7    foreign body exercise adjudicative power and have an adjudicative purpose").

8    2.  Applicant is the complainant and a party to the foreign proceeding. *See 28 U.S.C. §*

9    *1782(a) and Intel, 542 U.S. at 256* (stating that an interested person under § 1782

10   "plainly reaches beyond the universe of persons designated 'litigant,'" although there

11   is "[n]o doubt [that] litigants are included among and may be the most common

12   example").

13   3.  Applicant seeks only limited evidence in the form of witness testimony and

14   production of documents relevant to the  related to above referenced two accounts

15   and two different transfers that occurred, through the BoA and CHASE accounts,

16   listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified

17   in Par. 21) to help the South African Police Services – Serious Commercial Crimes

18   (SAPA # 3471/1/2019) "follow the money", identify and prosecute all the person(s)

19   and/or entities in addition to the person(s) already being investigated and who

20   created the fake and false domain names and documents.

21   4.  Applicant seeks discovery from Witness BoA, CHASE and CREDIT REGISTRY

22   related to the above referenced two accounts and two different transfers that

23   occurred, through the BoA and CHASE accounts, listing CREDIT REGISTRY as the

24   beneficiary, in May and June 2017 (as identified in Par. 21) and that information is

1          located and can be found in this District. *See 28 U.S.C. § 1782(a)*.

2     **C.  Discretionary Factors Favor Granting Applicant's § 1782 Application**

3          1.  **Witnesses are Outside Jurisdictional Reach of South African Authorities**

4              a.  The Witnesses BoA, CHASE and CREDIT REGISTRY are not the subject of

5                  the criminal investigations pending in South Africa.

6              b.  The Supreme Court held that since "nonparticipants in the foreign proceeding

7                  may be outside the foreign tribunal's jurisdictional reach ... , their evidence,

8                  available in the United States, may be unobtainable absent § 1782(a) aid."

9                  *Intel, 542 U.S. at 264.*

10             c.  A foreign tribunal has jurisdiction over those appearing before it and can itself

11                 order them to produce evidence. In contrast, nonparticipants in the foreign

12                 proceeding may be outside the foreign tribunal's jurisdictional reach; hence,

13                 their evidence, available in the United States, may be unobtainable absent §

14                 1782(a) aid. *Id. at 264.*

15             d.  As such, the relevant evidence, documents and information in BoA, CHASE

16                 and CREDIT REGISTRY's possession, custody and control are not in the

17                 possession of the foreign tribunal and would be accessible without judicial

18                 assistance in this jurisdiction. *See In re Chevron Corp., 2010 U.S. Dist. LEXIS*

19                 *47034, at \*20* (noting that Ecuadorian court and tribunal lacked jurisdiction to

20                 compel the individual, who was located in the district and not a party to the

21                 foreign proceedings, to produce the material sought) and *In re Microsoft*

22                 *Corp., 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (finding section 1782*

23                 *assistance unnecessary and improper where the discovery requested was*

24                 *already in the foreign tribunal's possession).*

2.  **Nature and Receptivity of South African Authorities to Evidence from 1782 Application**

    a.  Section 1782 (a) specifically provides "*The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, <u>including criminal investigations conducted before formal accusation . . . .</u>* "

    b.  Section 1782 also authorizes and encourages judicial assistance even as to foreign proceedings that have not yet commenced or advanced.   See *In re: Clerici at 1333 n. 12 (citing Intel, 542 U.S. at 248-49).*

    c.  Section 1782(a) contains no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding. See *Intel, 543 U.S. at 247; see also In re Clerici, 481 F.3d at 1333 n.12.*

    d.  Applicant needs not meet a foreign discovery requirement, prior to being entitled to assistance under section 1782. *See In re Application of Winning, 2010 WL 1796579 at *10, n.7.*

    e.  The receptivity of the foreign proceedings assistance from a U.S. court is one of the primary goals of § 1782 is to encourage foreign courts to provide similar assistance to U.S. courts. See In re Premises Located at 840 140th Ave. Ne., Bellevue, Wash., 634 F.3d 557, 563 (9th Cir. 2011).

    f.  The Supreme Court has not elaborated on how to evaluate the receptivity of the foreign court, other than to caution against attempting to conduct in-depth analyses of the laws of the foreign jurisdiction. Intel, 542 U.S. at 263.

g.  In evaluating the nature of the tribunal and character of the proceedings, courts in this Circuit have focused on the utility of the evidence sought. In re Ex Parte Application of Qualcomm Inc., 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016); see also Intel, 542 U.S. at 264.

h.  As already explained, the officers leading the investigations by The South African Police Services – Serious Commercial Crimes (SAPA # 3471/1/2019) have informed Applicant that they welcome the evidence he may able to secure from this 1782 Application and that they will share that information with the South African Department of Justice and South Africa's Branch of Interpol, who will also be investigating and prosecuting.

**3.  Applicant Is Not Attempting to Circumvent South African Proof Gathering Restrictions and Policies**

a.  Applicant is not attempting to circumvent foreign proof-gathering mechanisms in its efforts to discover the true identities of the persons or entities behind the internet fraud that was perpetrated against Applicant and does not have to prove receptivity to show they are not attempting to circumvent foreign proof-gathering mechanisms. See, e.g., In re Chevron, 762 F. Supp. 2d 242, 252 (D. Mass. 2010).

b.  Applicants' request for judicial assistance is only so he can assist in obtaining the documents showing the trail of the money so that the persons or entities behind the internet fraud that was perpetrated against Applicant can included in the South African Police Services – Serious Commercial Crimes (SAPA # 3471/1/2019) investigation.  See In re Application of Winning, 2010 WL 1796579 at *10.

**4.  Applicant Is Not Made in Bad Faith, for Purposes of Harassment or is part**

**of a "Fishing Expedition"**

a.  In considering applications for 28 USC 1782 judicial relief, district court may consider whether an application contains "unduly intrusive or burdensome requests," Intel Corp., 542 U.S. at 265, is "made in bad faith, for the purpose of harassment," Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 n.6 (2d Cir. 1995); In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated on a different ground by Intel Corp., 542 U.S. at 259; and Matter of Application of O2CNI Co., Ltd., Case No. C 13–80125 CRB (LB), 2013 WL 5826730, at *15–16 (N.D.Cal. Oct. 29, 2013).

b.  Applicant is not attempting to circumvent foreign proof-gathering mechanisms in its efforts to discover the true identities of the persons or entities behind the internet fraud that was perpetrated against Applicant and does not have to prove receptivity to show they are not attempting to circumvent foreign proof-gathering mechanisms. See, e.g., In re Chevron, 762 F. Supp. 2d 242, 252 (D. Mass. 2010).

c.  Applicant seeks only the information relevant to the above referenced two accounts and two different transfers that occurred, through the BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21) that the South African Police Services – Serious Commercial Crimes (SAPA # 3471/1/2019) will be able to "follow the money" to identify and prosecute all the person(s) and/or entities in addition to the person(s) already being investigated and who created the fake and false domain names and documents.

5. **Application Not Unduly Burdensome or Intrusive**

    a.  The requests made by Applicant are narrowly tailored to only testimony, information, documents and evidence that are directly related to the above referenced two accounts and two different transfers that occurred, through the BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May and June 2017 (as identified in Par. 21) that the South African Police Services – Serious Commercial Crimes Unit Investigation (SAPA # 3471/1/2019) and those documents are / should be in the possession, custody and control of BoA, CHASE and CREDIT REGISTRY.  As such the request is neither overly broad nor burdensome. *See In re Consorcio Ecuatoriano, 2012 WL 2369166,at \*20 n.7 and Intel, 542 U.S. at 265.*

    b.  The evidence requested is "relevant to the foreign proceeding", to wit: the foreign proceedings by the South African Police Services – Serious Commercial Crimes Unit Investigation (SAPA # 3471/1/2019). *See In re Dr. Braga, 789 F. Supp. 2d at 1304; compare In re Consorcio Ecuatoriano, 2012 WL 2369166 at \*24 (holding that the discovery is plainly relevant to the foreign proceedings where they formed the basis for the defenses in those proceedings), Kang v. Noro- Moseley Partners, 246 Fed. App'x. 662, 664 (11th Cir. 2007) (denial only due to "irrelevance of requested discovery to the nature of the foreign proceedings").*

    c.  Applicants' requests are not unduly intrusive and seek only testimony, information, documents and evidence relate to the money trail that will lead to persons or entities behind or who were art of the internet fraud to which Applicant fell victim and which documents are highly relevant to the issues

1                being considered in the foreign proceeding by the South African Police

2                Services – Serious Commercial Crimes Unit Investigation (SAPA #

3                3471/1/2019).

4        d.  Because the Witnesses BoA, CHASE and CREDIT REGISTRY are not

5                participants in nor subject to the jurisdiction of the South African

6                investigating authorities, it is uncertain that the relevant information related to

7                the true identities of the persons and entities behind the internet fraud against

8                Applicant can be accessed in the absence of the granting of this request, as

9                such are "outside the foreign tribunal's jurisdictional reach." *See Intel, 542*

10              *U.S. at 244.*

11      e.  The documents in Witnesses BoA, CHASE and CREDIT REGISTRY's

12              possession, custody and control carry sufficient relevance and evidentiary

13              value and providing them does not subject it to undue burden.  *See Fed. R.*

14              *Civ. P. 45(c)(3)(iv), Int'l Ass'n of Machinists and Aerospace Workers v. P&B*

15              *Transp., 2007 WL 4145974, at \*2 (M.D. Fla. 2007); Fadalla v. Life*

16              *Automative Products, Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing*

17              *Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).*

18      f.  The discovery requests of Applicant are sufficiently tailored and directly

19              relate to the foreign proceedings / investigations and are limited to the above

20              referenced two accounts and two different transfers that occurred, through the

21              BoA and CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in

22              May and June 2017 (as identified in Par. 21) so that the South African Police

23              Services – Serious Commercial Crimes Unit Investigation (SAPA #

24              3471/1/2019) can continue and expand its investigations and prosecutions to

1  "follow the money" and include persons and entities (other than those already

2  identified) and their relationship the transfers through BoA, CHASE and/or

3  CREDIT REGISTRY and how they were involved in the internet fraud

4  against Applicant. *See In re Consorcio Ecuatoriano, 2012 WL 2369166 at \*25*

5  *(holding that discovery was appropriately tailored as it "limit[ed] the request*

6  *to information" within a six year time period relating to one specific contract*

7  *and the deposition of a person most knowledgeable), with Advanced Micro*

8  *Devices, Inc. v. Intel Corp., 2004 U.S. Dist. LEXIS 21437 (on remand from*

9  *the Supreme Court, the district court found the 1782 application to be*

10  *"unduly intrusive and burdensome [since there was] . . . no attempt to tailor*

11  *its application to the subject matter of the EC Complaint").*

12  **6.  Applicant's Requests Satisfies Fed. R. Civ. P. Rules 26 & 45 Requirements**

13
14  **a.  FRCP Rule 26**

15
16  i.  Discovery under § 1782 is guided by the applicable standards found in the

17  Federal Rules of Civil Procedure. *See 28 U.S.C. § 1782* (providing that,

18  "[t]o the extent that the order does not prescribe otherwise, the testimony or

19  statement shall be taken, and the document or other thing produced, in

20  accordance with the Federal Rules of Civil Procedure).

21  ii.  A court may authorize early discovery for the parties' and witnesses'

22  convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts in

23  this district generally consider whether a plaintiff has shown "good cause"

24  for the early discovery. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL*

25  *4055667, at \*2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL*

26  *3419189 (N.D. Cal. 2010); Semitool, Inc. v. Tokyo Electron America, Inc.,*

1                *208 F.R.D. 273, 275-77 (N.D. Cal. 2002).*

2         iii.   The evidence needed by Applicants is in the possession, custody and control

3             of witnesses BoA, CHASE and CREDIT REGISTRY and is limited to

4             identifying information, such as names, addresses and contact information

5             of the persons and entities related to the above referenced two accounts and

6             two different transfers that occurred, through the BoA and CHASE

7             accounts, listing CREDIT REGISTRY as the beneficiary, in May and June

8             2017 (as identified in Par. 21) that is part of the South African Police

9             Services – Serious Commercial Crimes Unit Investigation (SAPA #

10            3471/1/2019) and which will also be part of the investigations and

11            prosecutions to "follow the money" to include persons and entities (other

12            than those already identified) who were part of the internet fraud against

13            Applicant, and what relationship the above transfers through BoA, CHASE

14            and CREDIT REGISTRY had on the fake, false and fraudulent emails,

15            domain names and documents that were used to defraud Applicant, most of

16            which originated in or were sent from South Africa.  As such, the request

17            does not violate the requirements of Fed. R. Civ. P. Rule 26.

18       **b.  FRCP Rule 45**

19
20         i.   Under FRCP Rule 45(a)(1)(C) a subpoena may command a nonparty served

21            to produce documents that are in its "possession, custody, or control."

22        ii.   "Control is defined not only as possession, but as the legal right to obtain

23            the documents requested upon demand." *Searock v. Stripling, 736 F.2d 650,*

24            *653 (2d Cir. 1984).*   "Control" may also be found where an entity has

25            "access to" and the "ability to obtain the documents." *Bank of New York v.*

1                    *Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 144 (S.D.N.Y.*

2                    *1997); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun*

3                    *Austria, 2006 WL 1328259, \*5 (S.D.N.Y. 2006) (same); Addamax Corp. v.*

4                    *Open Software Found., Inc., 148 F.R.D. 462, 467 (D. Mass. 1993).*

5         iii.    "Access" and "ability to obtain documents" is found where

6                  "documents ordinarily flow freely between" persons or entities. *Hunter*

7                  *Douglas, Inc. v. Comfortex Corp., No. CIV. A. M8-85, 1999 WL 14007, at*

8                  *\*3 (S.D.N.Y. Jan. 11, 1999).*

9         iv.    The evidence needed by Applicant is or should be in the possession, custody

10                 and control of witnesses BoA, CHASE and CREDIT REGISTRY as the

11                 evidence relates only to the above referenced related to above referenced

12                 two accounts and two different transfers that occurred, through the BoA and

13                 CHASE accounts, listing CREDIT REGISTRY as the beneficiary, in May

14                 and June 2017 (as identified in Par. 21) which are included in the South

15                 African Police Services – Serious Commercial Crimes Unit Investigation

16                 (SAPA # 3471/1/2019) .

17 **VIII.   CONCLUSION**

18        **WHEREFORE,** in view of the foregoing, Applicant prays (i) for an Order (in the form

19 attached) directing / permitting the issuance of subpoenas duces tecum (in the forms attached) to

20 witnesses BANK OF AMERICA, CHASE AND CREDIT REGISTRY to appear, testify and/or

21 produce the limited categories of testimony, information, documents, information and records

22 and (ii) for such other and further relief as is just and appropriate and consistent with 28 U.S.C. §

23 1782.

24
25                          Respectfully submitted,

1
2    Dated: February _____ , 2019
3
4                                                          /s/ Edward D. Fagan
5                                                          Edward D. Fagan, Pro Se
6                                                          590 NE Wavecrest Way
7                                                          Boca Raton, FL. 33432
8                                                          Tel. (561) 757-5432
                                                           Email: faganinternational@gmail.com
                                                                   Applicant Pro Se